37 So.2d 804

**STATE v. WILSON.**
No. 38558.

Nov. 8, 1948.

Lubin F. Laurent and F. Irvin Dymond, both of New Orleans, for defendant-appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., and John E. Fleury, Dist. Atty., and Frank H. Langridge and L. Julian Samuel, Asst. Dist. Attys., all of Gretna, for appellee.

O'NIELL, Chief Justice.

The appellant stands convicted of murder and sentenced to be electrocuted.

The record contains eleven bills of exception, but we find it not necessary to consider any but the two bills which were reserved to the judge's admitting in evidence, over the defendant's objection, two typewritten documents signed by the defendant and purporting to be his free and voluntary confessions. The first of the two alleged confessions was signed in the presence of six officers, namely, the sheriff of the Parish of St. Charles, in which parish the crime was committed, and three of his deputies, and two sergeants of the state highway police. That confession was made at the headquarters of the state highway police, in Jefferson Parish, near New Orleans. It was made during the night of the 15th and early morning of the 16th of July, 1946. The questioning of the defendant by the police officers commenced about or soon after 11:30 p. m., on July 15, on the arrival of the officers at the police headquarters with the defendant in their custody; and the obtaining of the confession was proceeded with until 5:00 o'clock the next morning, at which time the defendant signed the document which was typewritten and transposed into narrative form by one of the deputies who took part in the questioning of the defendant. The crime concerning which the defendant was questioned had been committed a month before, that is, on the night of June 15 or early morning of June 16, 1946. There was no one present except the defendant and the six officers having him in custody at the time of the making or signing of the alleged confession. After the defendant had signed the confession, that is, about 6:00 a. m., on July 16, 1946, he was taken by the officers to the parish prison in New Orleans and locked in a cell.

The second one of the alleged confessions was signed by the defendant in the parish prison in New Orleans on July 18, 1946, in the presence of a lieutenant and a sergeant of the state highway police and a deputy sheriff of the Parish of St. Charles. The sergeant of the state highway police and the deputy sheriff had witnessed also the signing of the first confession. In fact the deputy sheriff had typed the first confession, as it was alleged to have been made by the defendant. Captain Meredith, of the New Orleans police force, being the one who brought the defendant from his

cell into the room where the second confession was obtained, was in and out of the room from time to time during the making of the confession. He, in his testimony, according to the judge's per curiam, corroborated the statement of the deputy sheriff and the two state troopers that the confession was made freely and voluntarily. The second confession also was typewritten by one of the three officers who were present and signed the confession as witnesses.

The defendant's objection to the introduction in evidence of the alleged confessions was that they were not made or signed freely or voluntarily but that the defendant's signature was obtained by the officers by putting him in fear and by threats and acts of violence on their part. The testimony on that subject was heard by the judge in the absence of the jury before the confessions were allowed to be introduced in evidence. But the evidence concerning the manner in which the confessions were obtained was not reduced to writing.

Inasmuch as we have not the benefit of the testimony which was heard by the trial judge before he allowed the confessions to be introduced in evidence, we must base our decision of the question of admissibility of the confessions upon the per curiam of the judge, together with such facts as are admitted in the state's brief.

The crime was committed sometime during the night of the 15th or early morning of the 16th of June, 1946. The defendant, a colored man in his early thirties, lived in the neighborhood in which the crime was committed, and had lived there for some years, perhaps from the time of his birth. The crime was a gruesome one. It consisted of the clubbing to death of a man and his wife while they were asleep in their bed, and the ravishing of the woman. They were in their home, in a small settlement called New Sarpy, in St. Charles Parish. They were of the white race. The commission of the crime was discovered early on the morning of June 16. There was no eyewitness to the crime. The defendant, Wilson, was indicted separately for the two crimes of murder and for the crime of rape, but is being prosecuted in this case only for the murder of the woman. The two other indictments are yet pending.

Wilson had had a fight with a colored woman in that neighborhood early in the night or evening of June 15. Several days after the discovery of the crime the woman with whom Wilson had had the fight made an affidavit against him for assault in connection with the fight. The affidavit had no reference to the crimes of murder and rape. The affidavit was sent to the office of the sheriff of St. Charles Parish, in Hahnville, and afterwards was turned over to a deputy sheriff, E. M. Guidry, for the arrest of Wilson, who was then working in a sawmill at Hammond, Louisiana, about fifty or sixty miles from the place where the crime had been committed. Guidry went to Hammond to arrest Wilson, on

July 15, 1946, that is, a month after the crime had been committed. He arrived in Hammond about 9:00 o'clock that night, and accompanied by two police officers of the City of Hammond, arrested Wilson and brought him to the city police station. Guidry then went to the telephone in the police station and called the sheriff of St. Charles Parish, at Hahnville, the parish seat, about fifty miles away. While Guidry was conversing with the sheriff on the long-distance telephone, one of the two police officers, who were questioning Wilson, struck him for failing or refusing to answer their questions. Guidry then came from the telephone and prevented the officer from striking Wilson again.

Immediately after Guidry's long-distance telephone conversation with the sheriff, he, Guidry, with two companions, left with Wilson in their custody and conveyed him to the headquarters of the state highway police, in obedience of the instructions which the sheriff had given to Guidry on the long-distance telephone. The party arrived at the headquarters of the state highway police, in the Parish of Jefferson, near New Orleans, late on the night of June 15, perhaps sometime near or after 11:30 o'clock. The sheriff and his deputies and the police officers, whom we have mentioned, began questioning the defendant with the view of obtaining a confession from him if he was willing to make one, soon after their arrival with him at the state police headquarters; and, as we have

said, the procedure continued until about 5:00 o'clock the next morning, when the defendant signed the confession. About an hour later he was taken to the parish prison in New Orleans.

The present Constitution of Louisiana goes further in protecting an accused person against being compelled to give evidence against himself than any previous constitution went. In Section 11 of the Bill of Rights there is added, after the provision in the former constitutions that no person shall be compelled to give evidence against himself in a criminal case or in any proceeding that may subject him to criminal prosecution, this provision: "No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel confession of crime; nor shall any confession be used against any person accused of crime unless freely and voluntarily made."

In the Code of Criminal Procedure, in Article 451, it is declared: "Before what purposes [purports] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises."

This court has construed that article of the Code of Criminal Procedure to mean that before what purports to be a confession can be introduced in evidence it must be shown, not only affirmatively but by proof beyond a reasonable doubt, that it

was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. State v. Henry, 196 La. 217, 198 So. 910; State v. Graffam, 202 La. 869, 13 So.2d 249; State v. Ellis, 207 La. 812, 22 So.2d 181; State v. Ross, 212 La. 405, 31 So.2d 842, decided in May, 1947, and rehearing refused in June 1947. In State v. Henry, 196 La. at pages 239, 243, 198 So. at page 917, after quoting Article 451 of the Code of Criminal Procedure, the court proceeded thus: "If there were any reasonable doubt that the confessions of the accused were free and voluntary, they should have been excluded. 20 Amer. Juris., Evidence, par. 538, and State v. Garvey et al., 25 La.Ann. 191. The law cannot measure the force or effect of the influence upon the mind of the accused, and therefore excludes the declaration if any degree of influence has been exerted. State v. Young, 52 La.Ann. 478, 27 So. 50; Bram v. United States, 168 U.S. 532, 549, 18 S.Ct. 183, 42 L.Ed. 568."

In State v. Graffam, 202 La. at pages 887, 890, 13 So.2d 249, 255, the court quoted from Section 11 of the Bill of Rights of the Constitution of 1921, and quoted Articles 451 and 452 of the Code of Criminal Procedure, and proceeded thus: "The question presented in this case is whether defendant's confession was freely and voluntarily made. In order to determine the question, the facts and circumstances surrounding and entering into the making of the confession should be considered. The question is not to be determined by the mere conclusions or statements of the police or other officers that the confession was made freely and voluntarily. State v. Newton, 173 La. 382, 137 So. 69."

"Apart from the conflicting interpretations placed upon the hospital record by Dr. Cole and Dr. May, if their testimony can be considered, reason and common sense indicates that the state of mind of one situated as the defendant was when the confession was made is not such as to induce the belief that his statements were free and voluntary. In any event, under the circumstances disclosed by the record, there is a reasonable doubt as to whether defendant's confession was freely and voluntarily made. This being so, the doubt must be resolved in favor of the defendant, thereby forcing the further conclusion that the trial judge erred in admitting his confession over the objection of defendant's counsel."

In State v. Ellis, and again in State v. Ross in June 1947, the court repeated the doctrine of State v. Henry and State v. Graffam, thus [207 La. 812, 22 So.2d 182]:

"Furthermore, if there is any reasonable doubt as to whether the confession was free and voluntary, it must be excluded. 20 American Jurisprudence, verbo, Evidence, par. 537, p. 456; State v. Garvey, 25 La.Ann. 191; State v. Henry, supra.

"The force or effect of influence upon the mind of the accused cannot be measured, and where any degree of influence has been exerted, the confession must be excluded. State v. Young, 52 La.Ann. 478, 27 So. 50; State v. Doiron, 150 La. 550, 90 So. 920; State v. Lanthier, 201 La. 844, 10 So.2d 638."

State v. Henry, State v. Graffam and State v. Ellis, were all unanimous decisions.

According to the law of this state, therefore, which we have quoted, and which appears to be well settled, if there is a reasonable doubt that either of the confessions which were offered in evidence in this case was a free and voluntary confession, the verdict and sentence must be set aside and a new trial granted.

A decision rendered by the Supreme Court of the United States on January 12, 1948, in Haley v. Ohio, 68 S.Ct. 302, 92 L. Ed. ——, is very appropriate to the present case. The circumstances under which a confession of the crime of murder by a Negro boy 15 years of age was rejected by the court, as being obtained in violation of the 14th Amendment, were very similar to the circumstances in which the confession was obtained in the present case. The principal difference between Haley's case and the present case is that in the confession made in the present case the defendant states his age to be 31 years, whereas Haley was said to be only 15 years of age.

Our conclusion, from the record as made up, and without the benefit of the testimony on the question whether the confessions were free and voluntary, is that there is not sufficient proof that the first confession was free and voluntary.

The defendant filed in the district court a motion for a change of venue, averring that he could not obtain a fair and impartial trial in the parish in which the crime was committed. The judge, after hearing testimony on the motion, overruled it, and the defendant reserved a bill of exception; but the testimony on the subject was not reduced to writing; hence it is impossible for us to pass upon the question whether the defendant could or could not obtain a fair and impartial trial in the parish in which the offense was committed. Inasmuch as we must grant the defendant a new trial, he will have an opportunity, before entering upon the new trial, to renew his motion for a change of venue and to have the evidence reduced to writing and brought up for review in the event of another appeal.

The verdict and sentence appealed from are annulled and the case is ordered remanded to the district court for a new trial.

HAMITER, J., dissent and assigns written reasons.

McCALEB, J., dissents with written reasons.

HAMITER, Justice (dissenting).

The per curiam of the trial judge, solely upon which our decision herein must be based since the testimony adduced was not transcribed, contains nothing that causes me to entertain a reasonable doubt that the confessions of the accused were free and voluntary. Rather, the analysis therein of the testimony offered is convincing that the State affirmatively showed, as it was obligated to do, that the confessions were freely and voluntarily given.

As to the circumstances surrounding the striking of the accused by the Hammond police officer, the per curiam explains: "The evidence showed that Wilson was not questioned about the murder of the Petrolias at Hammond, and the questions asked him by the Hammond Police were absolutely foreign to the Petrolia murder, and the act of violence on the part of the Hammond policeman had no connection or anything to do with the confession that was later made by Wilson. As a matter of fact, whilst Wilson was at Hammond he was not asked a single question about the Petrolia murders." This being true, the striking could not and did not influence the making of the confessions (concerning the Petrolia murders for which defendant was tried) so as to render them inadmissible. See State v. Rini, 151 La. 163, 91 So. 664; State v. Lamotte, 168 La. 837, 123 So. 591.

Nor does the per curiam disclose that the accused was interrogated for an unreasonably lengthy period of time, or in an otherwise unfair manner, such as might constitute the use of duress and intimidation in the obtaining of the confessions. It shows merely, regarding the matter of time, that he was arrested in Hammond at nine o'clock of the night of July 15, 1946, and signed the confession at five o'clock the next morning in the State Police Headquarters. As to when the interrogation commenced during that period and whether or not it was continuous and unduly severe are questions which the per curiam does not answer.

I respectfully dissent.

McCALEB, Justice (dissenting).

I readily concur with all of the authorities cited and quoted from at length in the majority opinion to the effect that confessions must be shown to be free and voluntary and are not admissible if reasonable doubt exists to the contrary. However, I find nothing in the facts contained in the per curiam of the trial judge relative to the admissibility of the confessions (upon which we must base our conclusion) which leaves reasonable doubt in my mind that the confessions were wholly free and voluntary.

Indeed, the majority, after stating the incidents surrounding the movements of the accused and the law enforcement officers prior to the arrest and the conditions under which the confessions were obtained, merely conclude that "from the record as made up, and without the benefit of the testimony

on the question whether the confessions were free and voluntary, * * * there is not sufficient proof that the first confession was free and voluntary". Not one circumstance is adverted to in the opinion upon which the resolution of doubt based on the insufficiency of proof is predicated. Since we are controlled by the facts contained in the per curiam of the trial judge, the deduction that the proof in the record is inadequate to show that the first confession was free and voluntary appears not to be an answer to the question but, rather, a suggestion that either the trial judge has failed to set down all of the evidence upon which his ruling was based or that the State has more evidence to produce at the new trial.

The statement of facts surrounding the giving of the first confession contained in the majority opinion is fairly accurate with one exception—that is, the opinion fails to mention the very important finding of the district judge that, when the accused was struck by the city police officer in Hammond, he was not being questioned about the Petrolia murders. The trial judge states the striking incident in Hammond as follows:

"He, Wilson, and the Hammond Officers went into the Police Station, where Guidry proceeded to use the telephone to inform Sheriff Leon Vial of St. Charles Parish that he had Wilson in his custody and was bringing him in; and while he, Guidry, was using the telephone one of the

Hammond officers struck Wilson once and he, Guidry, protested, and stopped him from striking him again. Guidry was on the phone at the time; and testified that the Hammond officer struck Wilson because he would not answer some questions.

"Wilson was placed on the stand, and corroborated Guidry to the effect that the Hammond Police Officer struck him, but stated that he was beaten up with billies and struck on the head and stomach (which was subsequently denied by Guidry on rebuttal) because he, Wilson, could not answer their questions about where, what places he stayed at, and where he hung around whilst in Hammond, and that because he couldn't tell them, he was struck.

"The evidence showed that Wilson was not questioned about the murder of the Petrolias at Hammond, and the questions asked him by the Hammond Police were absolutely foreign to the Petrolia murder, and the act of violence on the part of the Hammond Policemen had no connection or anything to do with the confession that was later made by Wilson. As a matter of fact, whilst Wilson was at Hammond he was not asked a single question about the Petrolia murders."

Since, as found by the trial judge, the blow received by the accused at Hammond had no connection with questions asked him concerning the Petrolia murders, this blow cannot be considered as a basis for a holding that it had any causal connection with the confession subsequently given at

State Police Headquarters. The trial judge ruled accordingly, citing State v. Rini, 151 La. 163, 91 So. 664 and State v. Lamotte, 168 La. 837, 123 So. 591 to support his conclusion.

Eliminating the circumstance of the blow received by the accused in Hammond, the evidence is overwhelming to the effect that the confession signed by him at 5:00 a. m. on July 16, 1946 was free and voluntary unless we are to accept Wilson's testimony that he was beaten with "billies" by the state troopers and a deputy sheriff, in preference to the denials of those officers. The trial judge was convinced that the officers were telling the truth and I cannot find any circumstance to indicate why their testimony should not be believed. True, as pointed out by the majority, Wilson was arrested at 9:00 p. m. on July 15th and did not sign the confession until eight hours later, at 5:00 a. m., it thus being evident that he was questioned a considerable length of time before the confession was given. But this is not a circumstance which should cause doubt that the confession was voluntary and the opinion of the Supreme Court of the United States in Haley v. Ohio, 68 S.Ct. 302, 92 L.Ed. ——, is not authority for such a conclusion.

The facts in the Haley case present the questioning by police in relays of a fifteen year old Negro boy for several hours and thereafter holding him incommunicado, despite the plea of his mother and counsel,

for a period of three or four days. There is nothing in this case to show that the accused, (a grown man) ever requested counsel or that he was denied the right of communication with others.

I respectfully dissent.