PONDER, Justice.
 

 The defendant was convicted of murder and sentenced to be electrocuted. He has appealed from the conviction and sentence.
 

 We are presented on this appeal with fifteen bills of exceptions taken to the ruling of the trial judge by counsel for the defense.
 

 Bill of exception No. 1 was taken to the refusal of the trial judge to grant the defendant additional time to subpoena ten
 
 *479
 
 additional witnesses to be heard on the trial of a motion for a change of venue. Counsel for the defendant subpoenaed fifty witnesses to appear at the trial of the motion. . Forty of the witnesses were present when their names were called by the sheriff and ten were absent. The returns of the sheriff showed that the ten absent witnesses were either out of the parish or could not be found. The trial court would not grant additional time to summon witnesses but ordered instanter subpoenas to issue for the absent witnesses.
 

 Counsel contends that the defendant was entitled to these additional witnesses as a matter or right. He cites authorities to the effect that a defendant is entitled to additional witnesses when they are essential to his defense.
 

 We find no fault with the authorities cited but the trial of a case cannot be delayed when the defendant is afforded the testimony of forty witnesses at the hearing of a motion of this nature and there is no showing that the defendant could have procured witnesses who would have established his contention that he could not obtain a fair trial. In the absence of any showing that the defendant has been injured by this ruling of the court the exception is without merit.
 

 Bill of exception No. 2 was taken to the overruling of a motion for a change of venue. Counsel for the defendant states that the witnesses heard before a recess of court stated that the accused could not get a fair trial in the Parish of St. Charles and that those testifying after the recess of court stated that the accused could get a fair trial in that parish. He contends that there was prejudice, collusion and coercion of the witnesses who testified after the recess of court.
 

 There is nothing in the record to support the contention. The three witnesses who testified prior to the
 
 recess
 
 of the court did not testify that the accused could not get a fair trial in the parish. Two of them tes-' tified that he could get a fair, trial and the other witness did not know whether the accused could get a fair trial or not.
 

 Bill of exception No. 3 was taken to the overruling of an objection to the reading of the purported confession by the district attorney to the jury in his opening statement.
 

 The trial judge in his per curiam states that he instructed the jury that the opening statement of the district attorney could not be considered as evidence and that he is merely detailing what he expects to prove. Under the provisions of Article 333 of the Code of Criminal Procedure it is the duty of the district attorney in his opening statement to explain the nature of the charge and the evidence by which he expects to establish it. A conviction and sentence will not be set aside where the district attorney reads a confession to the jury in his .opening statement if the confession is subsequently admitted in evidence. State v. Cannon, 184 La. 514, 518, 166 So. 485.
 

 
 *481
 
 Bill of exception No. 4 was taken to the refusal of the trial judge to sustain an exception to a question propounded by the district attorney to the coroner. Counsel objected to the question on the ground that it calls for an assumption of certain facts which the coroner could not possibly know because he was not present at the time of the homicide and that his answer presumes that a blow was struck while the deceased was in bed. The question propounded was, “Will you explain the lack of blood between the pillow and the foot of the bed where the body of Mrs. Petrolia was lying ?” In answer to the question, the coroner stated, “Well, I think, gentlemen of the jury, that it is very easily explained.” “It is a medical fact.” “This individual, Mrs. Petrolia, was struck a blow while lying in bed * * * ” • Counsel for the defendant interrupted the witness and objected to the testimony on the grounds heretofore stated. We see no merit in this bill because the coroner was testifying as an expert witness based on the facts which he had discovered by his inspection of the premises and the deceased.
 

 Bill of exception No. 5 was taken to the admission of twelve objects found at the scene of the homicide. Counsel contends that these exhibits should have been introduced separately and not as a group. The various objects had been separately identified by the witnesses who had testified in the case. There is no merit in this bill.
 

 Bill of exception No. 6 was taken to the introduction of certain exhibits in evidence. These exhibits were a stick with blood on it found on adjoining premises; hair from the head of the deceased and her 1 husband, who had been killed at the same time, used in making a microscopic examination in comparison with the hair found on the stick, etc.; a specimen of hair found on the stick and a specimen of hair found from the deceased’s bed sheet. Counsel contends that these exhibits were not admissible in evidence because the chemist from the F. B. I. could not identify the hair as belonging to any particular person and could not identify the blood stains as blood coming from any particular person. The testimony of this laboratory expert was to the effect that the hair found on the stick was similar to the hair of the deceased and that the hair found on the bed sheet came from the body of a member of the Negro race. The objection goes to the weight and not to the admissibility of the evidence.
 

 Bill of exception No.
 
 7
 
 was taken to the introduction of a wrist watch belonging to the deceased which the accused had pawned shortly before his arrest. The objection seems to be principally leveled at the fact that the witnesses identifying the watch as being the property of the deceased were unable to state the serial number of it and call particular attention to all of its characteristics. From the per curiam of the trial judge, it appears that the watch was identified as being the property of the
 
 *483
 
 deceased before it was introduced into evidence and that the objection was mainly-leveled at the fact that the witnesses could not give the serial number of the watch. The objection goes to the weight and not the admissibility of the evidence.
 

 Bills of exceptions Nos. 8, 9 and 10 were taken to the rulings of the trial court regarding a confession made by the defendant on July 18, 1946. It appears from the evidence that the State placed a witness on the stand to prove that the confession was free and voluntary. While the witness Was testifying a controversy arose as to the admissibility of the confession. The trial judge had the jury withdrawn and the admissibility of the confession was inquired into out of the presence of the jury. The State placed several witnesses on the stand who testified to facts showing that the confession was free and voluntary. These witnesses were cross-examined by counsel for the defendant and he was afforded an opportunity to controvert the testimony offered by the State. The only witness placed on the stand by counsel for the defendant was one who testified to a contradictory statement made by a deputy sheriff. After the matter was submitted, the court ruled that the State had laid a proper foundation for the admission of the confession. Counsel reserved a bill of exception to the ruling. The jury was recalled and the Slate placed two witnesses on the stand who were present at the time the confession was made. These witnesses testified to facts showing the confession was free and voluntary. The State offered the confession in evidence and counsel for the defendant objected to its admission on the ground that he had a right to controvert its admissibility.
 

 Article 1, Section 11, of the Constitution of Louisiana provides:
 

 “No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel confession of crime; nor shall any confession be used against any person accused of crime unless freely and voluntarily made.”
 

 It is provided in Article 451 of the Code of Criminal Procedure, as follows: “Before what purposes to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.”
 

 It is well settled that a confession cannot be admitted in evidence until after it is shown, not only affirmatively but by proof beyond a reasonable doubt, that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. State v. Henry, 196 La. 217, 198 So. 910; State v. Graffam, 202 La. 869, 13 So.2d 249; State v. Ellis, 207 La. 812; State v. Ross, 212 La. 405, 31 So.2d 842; State v. Wilson, 214 La. 317, 37 So.2d 804.
 

 
 *485
 
 The defendant was convicted of this offense on a prior occasion. On appeal a new trial was granted because this court was not satisfied from the record, as made up, that the first confession was free and voluntary. The testimony touching the admission of the confession was not taken down and incorporated in the record. We suggested that on the new trial that the testimony touching the admission of the confessions be reduced to writing and made part of the record in event of another appeal. We did not adjudge that the confessions were not free and voluntary but our holding was to the effect that the record, as made up, left a reasonable doubt in our minds that the first confession was free and voluntary. State v. Wilson, supra.
 

 On the morning of June 16, 1946 Mr. and Mrs. Joseph Petrolia of New Sarpy, St. Charles Parish, were found in their home dead with their skulls crushed in It appeared that they had been clubbed to death while they were asleep and the woman had been ravished. During the night of June 15th, the same night of the murder, the defendant entered the home of two colored women in the neighborhood where the Petrolias lived, and struck the women with a stick as they lay in bed. One was injured on the head and the other’s arm was broken. The defendant was charged with aggravated battery for .striking these two women. When the officers sought to apprehend the defendant, they found he had disappeared. Thirty days thereafter, on July 15th, three deputy sheriffs from St. Charles Parish, havingacquired information that the defendant was in the vicinity of Hammond, went to Hammond to arrest the defendant. At their request, the chief of police and the marshal accompanied them and assisted in the arrest of the defendant. The defendant was brought to the police station at Hammond and one of the deputies phoned the sheriff of St. Charles Parish informing him that they had arrested the defendant. The sheriff requested them to bring the defendant to the highway police headquarters at the Huey Long Bridge and that he would meet them at that place. The defendant was interrogated for some four or five hours and confessed that he had committed the offense. The defendant was then placed in the parish prison in New Orleans. On July 18th, two days thereafter, he was again interrogated and made a further confession to the offense. He was indicted by the grand jury of St. Charles Parish for the murder of Joseph Petrolia, the murder of Mrs. Petrolia and for aggravated rape on the person of Mrs. Petrolia. In the present case he was tried and convicted for the murder of Mrs. Petrolia.
 

 We have examined the testimony, taken before the judge out of the presence of the jury, touching the admissibility of the confessions, and find that the State produced the witnesses who were present at the arrest of the defendant, the witnesses
 
 *487
 
 who brought him to the Huey Long Bridge, the witnesses who were present at the highway police headquarters when the defendant was interrogated and confessed to the offense, and the witnesses who were present at the time he confessed to the offense at the parish prison. All' of these witnesses testified that the defendant was not subjected to any treatment designed to compel a confession of the crime. The witnesses present at the time the confessions were made testified that the confessions were free and voluntary and that no force or promise was used to secure the confessions.
 

 The only witness placed on the stand to controvert the testimony of the State’s witnesses was a witness who testified that one of the deputy sheriffs told her, “I did not strike him but the boys at the bridge worked on him.” This statement was denied by the deputy sheriff. This testimony of the defendant’s witness could only be given effect as discrediting the testimony of the deputy sheriff. Even though the testimony of the deputy sheriff be discredited, the other witnesses have testified to facts that show the confessions were free and voluntary.
 

 Counsel for the defendant lays stress on the fact that some one slapped the defendant while, he was detained at the police station at Hammond and the fact that the second confession was made in the execution room at the parish prison.
 

 The only one who testified that the defendant was slapped
 
 was
 
 one of the deputy sheriffs. He stated that while he was phoning the sheriff of St. Charles Parish from Hammond that some one came in and slapped the defendant and that he reprimanded the person for so doing. He testified that the person left immediately. The other officers testified that they did not see this occurrence. The defendant had not been interrogated at that time about the murder but was being held for aggravated battery, an offense not connected with the murder.
 

 The testimony of the officials of the parish prison concerning the execution room is to the effect that the entire floor is painted green and unless one knows in advance that there is a trap door in the floor it would not be noticed. The testimony of the other witnesses who were present is to the effect that they did not see or notice the trap door in the floor. The room was selected because it was convenient and on the same floor of the cell in which the defendant was kept. There was a large table in the room and a number of chairs around it. The defendant and the witnesses were seated around this table during the interrogation and at the time the defendant confessed to the offense.
 

 No testimony was produced by the defense to show that the confession resulted from any fear or duress resulting from the incident at Hammond or from the fact
 
 *489
 
 that the second confession was made in the execution room of the parish prison.
 

 The admissibility of a confession is determined by the trial judge and not the jury. The effect of the confession is to be'determined by the jury after it has been held by the trial judge to be admissible. State v. Thomas, 208 La. 548, 23 So.2d 212 and the authorities cited therein; State v. Robinson, 215 La. 974, 41 So. 2d 848.
 

 Counsel for the defendant contends that he had a right to again test the admissibility of the confession before the jury. It appears from the record that he attempted to interrupt the State before the State had completed its evidence in chief in order to contest the admissibility of the confession. The court refused to permit the interruption but afforded counsel full opportunity to cross-examine the witnesses and place whatever evidence he desired to discredit the confession. The ruling is correct because the admissibility of the confession is to be determined by the court and the effect to be given it is to be determined by the jury.
 

 [12] Bills of exceptions Nos. 11, 12 and 13 were taken to the refusal of the trial court to admit in evidence a threatening letter, purported to have been received by a relative of the deceased, written one year before the offense was committed. The purport of the letter was that this relative’s life had ■ been threatened.
 

 From the per curiam of the trial court, it appears that the letter was addressed to parties other than any of the principals involved in the case and was in no wise connected with the case. Counsel for the defendant contends that the letter was offered to prove that the defendant did not commit the offense and that the crime was committed by another person. The evidence is not relevant.
 

 Bill of exception No. 14 was taken to the overruling of a motion for a new trial. The motion is based on the thirteen bills of exceptions and an allegation to the effect that the defendant was denied a trial by due process of law. We have already considered the issues raised in the bills of exceptions. Defendant alleges that the trial of the case was continuous from day to day with sessions of court lasting as late as 1:30 a. m. and that the trial ended on Friday at 4:00 o’clock in the morning. Counsel takes the position that he was greatly handicapped because of the long sessions of court. He states that he was the only counsel representing the defendant and that the State was represented by the district attorney and two assistants who worked in relays which gave the State an advantage in presenting the case.
 

 We have examined the minutes of the court and it appears that the sessions of court began at 10:30 a. m. and the only minute entry designating the time that the sessions ended was the minute entry of the jury reporting its verdict at 3:55 a. m.
 

 
 *491
 
 Counsel has cited us no authorities to support his contention. This question cannot be raised for the first time in a motion for a new trial. If counsel had a complaint he should have taken a bill at the time of the occurrence.
 

 Bill of exception No. IS was taken to a motion in arrest of judgment. The motion is predicated on the grounds set forth in six of the bills of exceptions. It presents no new issue and we have already discussed the issues raised in the bills of exceptions.
 

 For the reasons assigned, the conviction ■and sentence are affirmed.