86 So.2d 108

**STATE of Louisiana**

v.

**Charles JOHNSON.**

No. 42670.

Feb. 20, 1956.

Charles A. Byrne, New Orleans, for appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Leon D. Hubert, Jr., Dist. Atty., Peter J. Compagno, Asst. Dist. Atty., New Orleans, for appellee.

HAMITER, Justice.

In a bill of information the defendant, Charles Johnson, was charged with having committed in the Parish of Orleans on March 10, 1955 "aggravated burglary of the inhabited dwelling No. 456 Audubon Street, belonging to one Laura T. Hobson, with the intent to commit a theft therein * * *."

After trial, a jury rendered a verdict of guilty as charged; and the judge imposed a sentence of ten years at hard labor in the State Penitentiary.

As a basis for this appeal the defendant perfected eleven bills of exceptions. Four of these (Nos. 4, 5, 8 and 9) relate to two oral statements allegedly made by the accused and which the court permitted the jury to receive. We shall consider these four initially and together.

The record discloses that at approximately 3:00 o'clock of the morning of March 10, 1955 someone forcibly entered the home of Miss Hobson by breaking a pane of glass in a door of the house and turning the lock from the inside. Wearing a mask the intruder struggled briefly therein with Miss Virginia Mitchell, who resided with Miss Hobson as an employed companion, and then left the premises. A few minutes later officers of the New Orleans Police Department, having been summoned by telephone, arrived on the scene.

Following a conference with the two ladies Officers Anthony Polito and Edward O'Donnell went to the home of the defendant (who lived several blocks away and for a few days previously had been employed by Miss Hobson as a yard man) and brought him to the Hobson residence. Miss Mitchell, on observing the clothing he wore, concluded that he had been the intruder. Thereupon, the accused was taken to the Second District Police Station. However, before daylight of the same morning (March 10) he was returned to the scene of the crime, at which time and place he purportedly told the accompanying officers how he had broken the glass in the door and gained entrance to the premises.

The following day (March 11), at approximately 11:00 o'clock A.M., Miss Mitchell was in the police station for the purpose of making a statement. The accused allegedly came nearby and confessed to her, in the presence of Officers Polito and O'Donnell, that he was the person who had entered the room and grabbed her.

In the prosecution of this accused the state first offered the testimony of Miss Mitchell to show the facts and circumstances relating to the breaking and entering and to the struggle in which she was

engaged. Then it proceeded to lay the foundation for the introduction of the confession allegedly made by the accused to Miss Mitchell about 11:00 o'clock of the morning of March 11 at the police station in the presence of Officers Polito and O'Donnell.

While the jury was retired the last mentioned three persons testified that at such hour and place an oral confession was made to Miss Mitchell voluntarily and freely. However, they were not in accord respecting a question of whether the officers had left Miss Mitchell alone for some fifteen minutes immediately prior to the time the accused appeared before them.

In refutation, testimony of Dr. Samuel Karlin was offered, it having been to the effect that he examined the accused at 5:15 o'clock P.M. on March 11; that he found a small superficial abrasion of the skin on the outer side of the right thigh and, additionally, bruises on both legs (shins) about seven inches below the knees; that he was unable to say to what they were attributable, although he thought the leg bruises could have been caused by a policeman's night stick; and that the wounds were fresh, apparently having occurred within 24 hours prior to the examination. The accused also testified, he stating that the officers had beaten him (however, according to his own testimony, he made no complaint to anyone about a beating) and that he had not admitted to Miss Mitchell his having entered the Hobson residence.

After hearing such testimony in the absence of the jury the judge ruled that the alleged statement to Miss Mitchell was freely and voluntarily given. To the ruling defense counsel reserved bill of exceptions No. 4.

The jury, on its return to the court room, heard the same testimony. Immediately thereafter the court again ruled that such statement had been freely and voluntarily made. Defense counsel then reserved bill of exceptions No. 5.

Thereupon, Miss Virginia Mitchell was questioned, and she was permitted to answer, as follows:

"Q. There is testimony that on the morning of March 11th of this year, the defendant made an oral admission in your presence, and the Court has ruled it was made freely and voluntarily. Can you tell the Court and the jury in your own words the statement made by the defendant, as you remember it, on March 11th of this year? A. Charles Johnson looked at me and said 'I am the one that entered the room and grabbed you and threw you on the bed. I am sorry it was you Miss Virginia, I thought it was Miss Hobson.'

"Q. Was anything else said by this defendant in your presence? A. That's all."

In State v. Alexander, 215 La. 245, 40 So.2d 232, 233, the following was

said: "The jurisprudence of the State is well-settled to the effect that a confession must be free and voluntary in order to be admitted in evidence against the defendant in a criminal prosecution; that it is the duty of the State to prove that the confession is free and voluntary and that the admissibility of the incriminating statements or confession of the accused is a question of fact, that is, whether the confession was voluntary or not. The trial judge had to settle this question of fact within his sound discretion. * * *"

■ And in State v. Wilson, 217 La. 470, 46 So.2d 738, 743, we observed: "The admissibility of a confession is determined by the trial judge and not.the jury. The effect of the confession is to be determined by the jury after it has been held by the trial judge to be admissible. * * *"

■ In the instant case, from our study of the evidence relating to bills of exceptions Nos. 4 and 5, we cannot conclude that the trial judge abused his discretion in finding that the alleged oral statement made by the accused to Miss Mitchell on March 11 at the police station was free and voluntary. She, as well as the two officers who were present at the time, testified emphatically that it was not given under the influence of fear, intimidation, threats or promises.

The other oral statement attributed to the accused, about which complaint is made in bills of exceptions Nos. 8 and 9, was allegedly given (as above shown) to Officers Polito and O'Donnell before daylight of the preceding day (March 10) while he was in their custody at the Hobson home. The purported admission was testified to by Officer Polito (during the state's examination of him with reference to events occurring immediately after the accused was first taken to the Hobson residence and identified by Miss Mitchell), and it was received by the jury, in the following manner:

"Q. Approximately how long did you remain at 456 Audubon Street with the defendant? A. Maybe about twenty minutes.

"Q. Upon leaving 456 Audubon Street, where did you go? A. We took Charles to the station, second district.

"Q. Did you have occasion to go any other place from the police station with the defendant, Charles Johnson? A. We did.

"Q. Where did you go? A. *Charles said he would show us where he had picked up a stick to break the glass. We took Charles to the house and he recounted how he broke the glass, how he got in the house.*

"By Mr. Byrne: Object. No predicate has been laid. I ask it be stricken.

"By the Court: I have nothing before me now.

"By Mr. Byrne: I ask that portion of the testimony tantamount to a confession be stricken.

"By the Court: I refuse to strike anything from the record.

"By Mr. Byrne: Reserve a bill, making the officer's testimony part of the bill.

"By Mr. Byrne: I ask the jury be instructed to disregard that.

"By the Court: Instruction refused.

"By Mr. Byrne: Reserve a bill." (Italics ours.)

As to the bills of exceptions thus reserved (Nos. 8 and 9) the trial judge, in a Per Curiam, states: "At the time that officer Polito stated what the accused told him * * * and the objection was made, there had already been admitted a confession by the accused, for which a proper predicate had been laid. It was and still is my position that this additional statement was merely a repetition of the confession already admitted in evidence. In the confession which was admitted, the defendant confessed that he was the culprit, and the additional statement was simply a repetition of this."

In their original brief before this court counsel for the state took the following position: "The trial judge having admitted the oral confession [discussed above], the State was permitted to question witnesses as to the contents of the confession, and that is exactly what happened and what

was objected to and is the basis of bills of exceptions numbers 8 and 9. Therefore, the defendant was not prejudiced, nor did he suffer any injury; for the jury had already heard the contents of the free and voluntary confession. The questions involved in bills 8 and 9 were merely parts of the oral confession already admitted." (Brackets ours.)

■■■ Obviously, the recounting by the accused (referred to by Officer Polito), as to "how he broke the glass, how he got in the house", was not merely a part of the oral confession already admitted. In the introduced confession allegedly given to Miss Mitchell he made reference only to his entering the *room* and struggling with her; whereas, in the other statement he was talking about his breaking and entering the house. Moreover, and of great significance in this consideration, the two statements (as above shown) were made at widely separated times and places and under entirely different circumstances. We must and do hold, therefore, that the remarks attributed to the accused by Officer Polito amounted to an independent confession. To say the least they constituted a separate admission of inculpatory facts which, under our jurisprudence, must be treated as a confession with respect to the requirement of laying a proper foundation for the introduction thereof. See State v. Robinson, 215 La. 974, 41 So.2d 848 and State v. Clark, 228 La. 899, 84 So.2d 452. Accordingly, particularly since no founda-

tion had been laid therefor and no reference had been made to it in the state's opening statement, such confession should not have been allowed in evidence; and it was error for the trial judge to refuse to instruct the jury to disregard it.

In a supplemental brief filed here counsel for the state now contend: "In the instant case in view of the fact that a confession, and a proper one, had *already* been heard by the jury, it is submitted that the gratuitous statement of the witness did not add much, if anything, to the state's case, particularly since the prosecution did not pursue the point at all. Conceding that it would have been better to instruct the jury to disregard, there was very much else in the case [from] which the jury could, as they did, find the defendant guilty. * * * We think that the other evidence in the case was so strong that this chance remark by officer Polito could not have had any substantive bearing on the final result." (Brackets ours.)

Contentions similar to the one now urged by the state, i. e., that the improperly admitted confession did not prejudice the accused, have been made to and rejected by this court on previous occasions.

In State v. Ellis, 207 La. 812, 22 So.2d 181, 183, which involved a factual situation almost identical to the one here, there were two confessions—one oral and one written. In point of time the written one had been given prior to the oral one. On the trial of the case the state initially proved

and introduced the oral confession (the one made last) without any objection whatever. When the written confession was offered (the one made first) defense counsel objected on the ground that the state had failed to affirmatively show that it had been freely and voluntarily given. The objection was overruled and it was permitted to be introduced. On appeal we concluded that the written confession (the one first made) was not shown to have been freely and voluntarily given and that, hence, its admission in evidence constituted error. But there, as here, the state contended that the introduction was not prejudicial. Of this contention we said: "The State is under the impression that the erroneous admission of the written confession did not prejudice the defendant's rights. It is argued that there was ample evidence to support the verdict without the use of the confession and that its admission was harmless error.

"The use of the written confession by the State precludes it from now saying that it was not used to the prejudice of the accused. * * *"

The resulting prejudice in the instant case is even more apparent. As pointed out above the confession secondly made in the Ellis case was admitted in evidence without any objection on the part of the defendant—a circumstance which carried the necessary implication that it not only had been made but also had been given freely and voluntarily. In the instant case,

on the other hand, the confession secondly made was allowed to be introduced over the defendant's strenuous objection, he maintaining that it was never given at all.

The Ellis case was cited with approval and followed in State v. Ross, 212 La. 405, 31 So.2d 842 and State v. Wilson, 214 La. 317, 37 So.2d 804, both of which involved the question of whether the introduction of an inadmissible confession would prejudice the substantial rights of the accused. (The author of this opinion dissented in the last cited two cases, he having entertained the view that the factual situations involved therein were different from the one in State v. Ellis to the decision in which he had subscribed.)

But irrespective of the above referred to decisions, we are unable to agree that this accused was not prejudiced by the improperly introduced confession. As pointed out above the effect of a confession is to be determined by the jury. The jurors in the instant case might well have given no weight to the admitted confession allegedly made to Miss Mitchell in the presence of the two officers, particularly since the three were not in complete agreement as to the circumstances surrounding its making.

The remaining bills of exceptions perfected by appellant need not be considered for they relate to matters that likely will not arise in the course of a new trial.

For the reasons assigned the conviction and sentence are set aside and the case is remanded for the purpose of affording to the defendant a new trial.

FOURNET, C. J., and MOISE, J., absent.