HAWTHORNE, Justice.
 

 Albert Ross, a Negro, was indicted by the grand jury for the murder of William Howard Braus, a white man. Defendant was tried, adjudged guilty, and sentenced to death. From this conviction and sentence he has appealed.
 

 Bill of Exception No. 1 was taken by defendant’s counsel to the overruling by the trial judge of a motion to quash the indictment founded on the following facts and circumstances:
 

 In empaneling the grand jury which returned the indictment against the accused, from the grand jury list the court selected .as foreman P. G. Richard, who was present. Thereafter, under the direction of the court, the sheriff drew by lot from the envelope endorsed “List of Grand Jurors” the names of 11 individuals. All grand jurors whose names were drawn from the envelope were present and answered as their names were called, with the exception of Joachim J. Lagarde, his name being the tenth one drawn from the envelope.
 

 Prior to the drawing of the names from the envelope, the absent juror had failed to answer his name when the entire jury list was called, and the judge ordered that an attachment issue instanter for his appearance. Before the attachment issued, the sheriff’s office telephoned the absent juror, who stated that he was under the impression that he was to report for jury duty the following day, that this was the reason for his absence, and that he was leaving his home immediately for the purpose of appearing in court. When the judge was given this information, he ordered the issuance of the attachment to be held in abeyance, and it was never issued. The absent juror actually appeared approximately one hour after his name was called. In the meantime, prior to his appearance, the oath was administered to the foreman and the remaining members of the jury, and the court’s charge was delivered, as provided by law. When Mr. Lagarde made his appearance in court, and after the cause of his tardiness was ascertained by the judge, a deputy clerk administered to him the regular juror’s oath, but upon the instructions of the court administered to him the complete oath as taken by the foreman and also the oath taken by each member of the grand jury. The judge then proceeded to charge Mr. Lagarde in the same manner and from the same notes used when he had delivered his charge to the foreman and the other members of the .grand jury. Thereupon Mr. Lagarde retired to the jury room and joined the remaining members of the grand jury.
 

 
 *207
 
 The record discloses that counsel for the accused and the district attorney agreed and stipulated into the record a statement to the effect that, after the said Joachim J. Lagarde was duly sworn as a grand juror out of the presence of the foreman and the other members of the grand jury, he joined the grand jury in the jury room and participated in all its deliberations until its final report, and that as a .member of the grand jury he heard all the witnesses who appeared before it in the matter of the State of Louisiana v. Albert Ross.
 

 Counsel for defendant contend that, when Mr. Lagarde failed to appear and answer his name when drawn from the envelope, the judge should have required the sheriff to draw additional names until the eleventh juror announced himself as present, and that, instead of drawing the name of another grand juror, the court permitted Mr. Lagarde to report later, after the foreman and the other members had been sworn and charged, and that he became a member of the grand jury contrary to a provision contained in Article 184 of the Code, of Criminal Procedure that the judge shall select from the list of grand jurors a suitable person to act as foreman of the grand jury, and the sheriff under the direction of the court shall draw by lot from the envelope endorsed “List of Grand Jurors” the names therein until 11 answer, who, with the foreman, shall constitute the grand jury.
 

 Counsel also complain that Mr. Lagarde did not take the full oath as required by Article 204 of the Code of Criminal Procedure, and for this reason was not competent to sit as a member of the grand jury or even be present during its deliberations.
 

 The grand jury which returned the indictment against the accused in this case was drawn from a grand jury list containing the names of 18 white men and two Negroes. Counsel contend that, as a result of the procedure in the selecting of the grand jury, the jury was composed entirely of persons of the white race, and that defendant lost the chance of having one of the Negroes who were on the grand jury list drawn as a grand juror, and that thereby he was deprived of due process of law, in violation of Article 184 of the Code of Criminal Procedure, Section 2 of Article I of the Louisiana Constitution of 1921, and the Fourteenth Amendment of the Constitution of the United States.
 

 After the name of the absent juror had been drawn from the envelope and when the court had been informed that he was available for jury duty and was on his way to court, he became thereby a member of the grand jury, and the judge was powerless to remove him or excuse him except for legal cause.
 

 In State v. Smith, 145 La. 1091, 83 So. 264, 266, this court said: “* * * In these circumstances, if the judge be al
 
 *208
 
 lowed to excuse or discharge one member of the jury so drawn without good cause (and by this is meant a legal cause), then he may excuse any number (6 having been excused in the present case), and thereby choose a grand jury of his own liking. Such a course is not contemplated by the law, and, when a competent male citizen is once drawn in the manner provided by law as a grand juror, he becomes thereby irrevocably a member of the jury, and the judge is powerless to remove him, except for legal causes subsequently accruing. State v. McGarrity, 140 La. [436], 444, 73 So. 259, and authorities there cited.”
 

 Defendant does not contend that the juror Lagarde did not possess the qualifications necessary to become a member of the grand jury, but insists that the trial judge should have proceeded to draw from the envelope the name of another juror when Lagarde failed to answer his name when called and drawn therefrom. The members of the grand jury are presumed to possess the necessary qualifications, and the burden of proof is on him alleging the contrary. There is no such allegation in this case. State v. Gonsoulin, 38 La.Ann. 459; State v. Guillory, 44 La.Ann. 317, 10 So. 761; State v. Wilson, 204 La. 24, 14 So.2d 873.
 

 It is true that certain persons are exempt from serving as grand or petit jurors, as set out in Article 174 of the Code of Criminal Procedure, but these exceptions are personal and must be claimed, by the jurors themselves, and no such exemption was claimed here.
 

 In this case the better procedure may have been for the trial judge to have awaited the appearance of the absent juror before administering the oath to the foreman and the other grand jurors whose names had been drawn to serve as such. But, in view of the stipulation of counsel that the absent juror, after having been sworn, participated in all the deliberations of the grand jury until its final report was rendered and as a member of the grand jury heard all the witnesses who appeared before it in this body’s investigation of the charge against the defendant Albert Ross, the accused was not harmed or prejudiced in any manner, nor did he suffer any injury thereby.
 

 There is no merit in counsel’s complaint that Mr. Lagarde did not take the full oath as required by Article 204 of the Code of Criminal Procedure and for this reason was not competent to sit as a member of the grand jury or to be present during its deliberations.
 

 The record discloses that he took the oath which had been previously administered to the foreman as well as the oath which had been administered to each member of the grand jury, and the very article cited by counsel provides “* * * that
 
 the full oath shall be administered .*
 
 .* *
 
 to every grand juror not personally"present at the taking óf the oath by the foreman.”
 
 (All italics ours.)
 

 
 *209
 
 In support of counsel’s contention that defendant was denied due process of law because of the manner of selecting the grand jury which returned the indictment against him, they cjte the cases of State v. Pierre, 189 La. 764, 180 So. 630, rev’d Pierre v. State, 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757; and State v. Pierre, 198 La. 619, 3 So.2d 895. There being no evidence whatsoever that there was any systematic discrimination or exclusion of Negroes, solely because of their race or color, from the grand jury which returned the indictment against this defendant, these cases are not applicable.
 

 Possibly, if the trial judge had discarded the name of the absent juror and had proceeded to have drawn from the envelope the name of another juror in his stead, then in that event, there might be some ground for the complaint that the defendant was deprived of due process of law as guaranteed by the Constitutions of this state and of the United States; for, as pointed out hereinabove, the trial judge has no right to select the jury but must be governed solely by the provisions of Articles 172 and 174 of the Code of Criminal Procedure of this state.
 

 Bill of Exception No. 2 was taken to the introduction in evidence of a number of confessions of the accused, over the objection of his counsel that they were not freely and voluntarily given or that the proper foundation had not been laid for their admission.
 

 The trial judge in his per curiam has very properly reconstructed for our consideration the sequence of events leading up to each of these confessions and all the facts and circumstances under which these confessions were given.
 

 The accused was arrested and taken to Thibodaux about 9:30 p.m. on Monday, March 18. Shortly thereafter he was interrogated by Sheriff Barker. During this interrogation the defendant admitted that he had participated in the crime but stated that the blows which caused the death of the deceased had been struck by two other suspects, who were also in custody at the time, but in the course of this interview his statement was subsequently modified to the extent that he admitted striking one of the blows (the deceased having been struck three blows with a piece of iron).
 

 Some time later, another interrogation of the accused was conducted by other officers, a member of the state police and a deputy sheriff, in the absence of Sheriff Barker. The accused at this time at first completely denied his participation in the crime, and it was during this interveiw that the deputy sheriff told the accused that “the best thing to do is to tell the truth because we have the evidence against you”. On further questioning the accused admitted his participation in the commission of the crime but insisted that another suspect struck the blows which caused the death of the deceased.
 

 
 *210
 
 About 4:00 of the next afternoon, March 19, the accused sent word to Deputy Bourgeois that he wanted to see him, whereupon Bourgeois, in the company of Deputy Sheriff Dupre, went to the jail cell where the accused was confined. The accused informed these officers at this time that he wanted to confess the crime and tell exactly what had happened. He was advised by the officers that he did not have to speak unless he wanted to, but he insisted that he wanted to confess the crime. He then proceeded to make an oral confession, which gave full and complete details of the homicide and of defendant’s actions before and after the death of the deceased. In this confession defendant admitted that he had gone alone and unaccompanied to the house of the deceased, that he alone was responsible for the crime, and that it was he who struck the blows which killed the deceased.
 

 After giving this confession he stated that he was willing to have it put in writing. He then repeated the confession before a stenographer, it was taken down in shorthand and read back to him, and he admitted the correctness thereof and affixed his signature to the shorthand notes. The following morning, Wednesday, March 20, the transcription of the stenographic notes was brought to the defendant by the officers, accompanied by the stenographer and a notary public, and, after it was read to him, he stated that it was true and correct, and that he was willing to sign it. Under oath administered by the notary, he signed the written confession, and the notary and the other persons present affixed their signatures thereto.
 

 All of the statements made by the accused in these interviews, together with his written confession, were offered in evidence over the objection of defendant’s counsel, and, when the trial judge overruled the objection, this bill was reserved.
 

 The trial judge’s per curiam clearly indicates and shows conclusively that the accused made three' confessions, each of which, if true, was sufficient for his conviction. The
 
 first
 
 was to Sheriff Barker, in which defendant admitted his participation in the crime and the striking of one of the blows which caused the deceased’s death. The
 
 second
 
 was made to a deputy sheriff and a member of the state police, in the absence of the sheriff, in which he admitted his participation in the crime but implicated others and denied striking any of the blows. The
 
 third
 
 was the oral confession, which was subsequently reduced to writing and signed by the accused, as hereinabove set forth.
 

 Under these circumstances, the question presented for our determination is whether all of these confessions were properly admitted in evidence.
 

 It is the law in this state that, before what purports to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary and not made under the influence of fear,
 
 *211
 
 duress, intimidation, menaces, threats, inducements, or promises. Under this well settled principle of law, which is found in Article 451 of the Code of Criminal Procedure, the burden of proof was on the State to show
 
 affirmatively
 
 that each one of the confessions above enumerated was admissible under the requirements of this article.
 

 The record as made up in this case shows that the State laid the proper foundation for the admission of the first confession made to Sheriff Barker and for the third oral confession, which was subsequently reduced to writing. This is not true, however, with reference to the second confession made to the deputy sheriff and the member of the state police.
 

 During the time when the State was seeking to lay the foundation for all of these confessions, in the absence and out of the presence of the jury, it was entirely proper for the the trial judge to hear evidence of all the facts and circumstances surrounding each confession, but, after hearing such testimony, he should not have permitted the second confession of the accused to be heard by the jury and should have excluded it, because it was not freely and voluntarily given since it was made during the interrogation in which one of the officers stated that
 
 "the best thing to do is to tell the tnith because we have the evidence against you”.
 

 The jurisprudence is well settled that a confession will not be excluded because of mere exhortation or adjuration to speak the truth, but such exhortation or adjuration, accompanied by an expression that it would be better for the accused to tell the truth, has been the subject of many conflicting decisions throughout this country. To us the real question in such case is whether the languge used in regard to speaking the truth, when taken in connection with the attendant circumstances and with other language spoken in the same or at some prior interview, shows that the confession was made under the influence of some threat or promise, for in such case the confession is inadmissible.
 

 In the case of State v. Williams, 129 La. 215, 55 So. 769, Ann.Cas.l913B, 302, this court said:
 

 “It is well settled that a confession will not be excluded where there is a mere exhortation or adjuration to speak the truth. Where an exhortation is accompanied with an, expression that it would be better for the accused to speak the truth, the authorities are divided. 12 Cyc. 467 and 468. In State v. Alphonse, 34 La.Ann. 9, and State v. Meekins, 41 La.Ann. 543, 6 So. 822, it was held that such an expression did not imply a promise or a threat. In State v. Alexander, 109 La. 557, 33 So. 600, it was held otherwise under a different state of facts.
 

 “The true test seems to be:
 

 “ ‘Was the inducement of a nature calculated, under the circumstances, to induce a confession, irrespective of its truth or
 
 *212
 
 falsity?’ Wigmore, Evidence, vol. 1, § 832.”
 

 In the instant case, with reference to the second confession, the statement of the deputy sheriff to the accused was more than a mere exhortation or adjuration to speak the truth, since it was accompanied by the expression that it would be the best thing to do. If all that the deputy sheriff had said to the accused was “the best thing to do is to tell the truth”, under the circumstances in this case the confession made at that time would, in our opinion, have been admissible. However, his remarks went much further because the deputy’s statement that “the best thing to do is to tell the truth” was coupled with the expression “because we have the evidence against you”.
 

 To us- this is susceptible of only one meaning, that is, “Since we have the evidence to convict you, it would be better, or easier on you, to make a full confession.” This certainly was an inducement or promise calculated to make the defendant speak.
 

 Language similar to that spoken by the deputy sheriff in this case was considered to have induced an involuntary confession in State v. Stevenson, 212 N.C. 648, 194 S.E. 81. The officer in that case said to the accused: “ ‘There is no use you beginning to tell a lie to me this morning, I have already got too much evidence to convict you. We are going to take you down there.’ ”
 

 In holding that the confession was not admissible in evidence, the court said: “We are of opinion that the alleged confession having been made under the circumstances described by the officer, was involuntary and incompetent. The admission of it in evidence is error. State v. Anderson, 208 N.C. 771 at pages 777 and 783, 182 S.E. 643, 650; State v. Myers, 202 N.C. 351, 162 S.E. 764; State v. Livingston, 202 N.C. 809, 164 S.E. 337; State v. Grier, 203 N.C. 586, 166 S.E. 595; State v. Gosnell, 208 N.C. 401, 181 S.E. 323; State v. Moore, 210 N.C. 686, 188 S.E. 421,”
 

 Since the accused was the only individual charged with the murder of the deceased in the indictment returned by the grand jury, it necessarily followed that the State did not rely on the first two.confessions in which the accused implicated others, but relied for conviction in this case entirely on the third oral confession, subsequently reduced to writing, in which defendant admitted that he was the sole perpetrator of the crime. To state it somewhat differently, it was the State’s contention that the last confession was a true statement of what occurred in connection with the homicide.
 

 However, be that as it may, the second confession was erroneously admitted, and its admission was reversible error.
 

 In the case of State v. Ellis, 207 La. 812, 22 So.2d 181, 182, this court pointed out that:
 

 “ ‘A confession is voluntary in law if, and only if, it was, in fact, voluntarily
 
 *213
 
 made.’ Ziang Sung Wan v. United States of America, 266 U.S. 1, 45 S.Ct. 1, 3, 69 L.Ed. 131; State v. Henry, 196 La. 217, 198 So. 910. The State has failed to show affirmatively that the confession was free and voluntary.
 

 “Furthermore, if there is any reasonable doubt as to whether the confession was free and voluntary, it must be excluded. 20 American Jurisprudence, verbo, Evidence, par. 537, page 456; State v. Garvey, 25 La. Ann. 191; State v. Henry, supra.
 

 “The force or effect of influence upon the mind of the accused cannot be measured, and where any degree of influence has been exerted, the confession must be excluded. State v. Young, 52 La.Ann. 478, 27 So. 50; State v. Doiron, 150 La. 550, 90 So. 920; State v. Lanthier, 201 La. 844, 10 So.2d 638.”
 

 In that case, the defendant had made two confessions, one written and the other oral. The oral confession was admitted in evidence without objection, but counsel for defendant objected to the written confession on the ground that the State had failed to show affirmatively that it had been freely and voluntarily made. This court found that the written confession was not freely and voluntarily given and, after so finding, reversed the conviction, although the State contended that there was ample evidence to support the verdict without the use of the written confession, and that its admission was harmless error. In this connection we said: “The use of the written confession by the State precludes it from now saying that it was not used to the prejudice of the accused. * * * ”
 

 In the case at bar, as in that case, the fact that the jury heard the oral confession which we have designated as Confession No. 2, which was offered in evidence by the State over defendant’s objection, was prejudicial to the accused, and he is entitled to a new trial.
 

 During the progress of the trial, three other bills were reserved, but, due to the fact that the circumstances surrounding these bills will probably not arise at a subsequent trial, it would serve no useful purpose for us to discuss them here.
 

 For the reasons assigned, the conviction and sentence are set aside, and the case is now remanded to the lower court to be proceeded with according to law.