On Rehearing
McCALEB, Justice.
This is a prosecution for murder. At about 8:30 a. m. on January 31, 1959 appellant, a 37 year old Negro resident of Opelousas, Louisiana, went to the home of a neighbor, a Negro woman named Virgie Lee Thibodeaux, and obtained her consent to have her 1U/2 year old daughter, Joyce Marie Thibodeaux, work for him several hours at his nearby home, stating that his wife was an invalid. After bringing the juvenile to his home for a brief stay, he took her to an abandoned Negro bar and restaurant located on Hiram Street in the city of Opelousas, a considerable distance from his residence. At this abandoned bar, appellant had sexual intercourse with the young girl and subsequently killed her by means of strangulation and suffocation, covering her body with old clothes which he had brought on the premises. Appellant was arrested on the following day, when the child’s body was found, and was subsequently indicted for the crimes of aggravated rape[1] and murder.[2] After the Grand Jury had returned the two indictments, the trial judge appointed two reputable attorneys to represent him and pleas of not guilty were entered on April 13, 1959.
Appellant was brought to trial on the murder indictment on May 27, 1959 and, on May 29, 1959, the judge ordered that a mistrial be entered in the case, the jury being unable to reach a verdict after de *616 liberating for several hours. Appellant was then retried on this indictment on June 22, 1959 and, on June 23rd, the jury found him guilty as charged. In due course, he was sentenced to death by electrocution. During this trial he reserved 26 bills of exceptions which were perfected by his counsel on this appeal. However, counsel have not urged all of the bills in this Court. They have specified, briefed and argued 13 errors committed in the trial court on which they are relying for a reversal of appellant’s conviction and sentence. In view of this, we assume that any bill not specified and discussed by counsel has been abandoned.
On first hearing, this Court considered only bill of exceptions No. 9 (appellant’s specification of error No. 2) which we found to be well taken and ordered a new trial in the case. The State has been granted a rehearing and we address our immediate attention to a reconsideration of our ruling on Bill No. 9. This bill was taken to the action of the judge in exempting from his order sequestering the witnesses, City Detective Zerangue, a witness for the State and chief investigator in the case.
In his per curiam to bill of exceptions No. 9 the trial judge states:
‘The court, in its discretion, permitted the chief investigating officer to remain in the court with the District Attorney and in that the accused was in no way prejudiced by the presence of the investigating officer or his testimony.”
Defense counsel concede that the judge had the power to exempt witnesses from his sequestration order but they say that he abused his discretion in this case because his per curiam does not show that he had a valid reason for exempting Zerangue from the severance rule; that Zerangue was an important witness in the case, having discovered the body of the child and having obtained an oral confession from appellant; that there was no need for his presence in the courtroom and that appellant suffered prejudicial injury as a result because the exclusion of Zerangue from the rule deprived appellant, for all practical purposes, of the right to cross-examine him and, at least, impaired the effectiveness of counsel’s cross-examination. In support of this argument counsel rely in the main on State v. Carter, 206 La. 181, 19 So.2d 41, 44.
The holding on first hearing that the judge acted arbitrarily and unreasonably in exempting Zerangue from the sequestration order was founded on the premise that the judge did not state a reason for his action and, therefore, the circumstances obtaining herein were parallel to those in State v. Carter. In that case, it was held that the trial judge abused his discretion in exempting three deputy sheriffs and an investigator from the order of sequestra *618 tion, since he assigned no reasons therefor and that the accused suffered serious injury and prejudice as a result thereof.[3]
A reconsideration of the judge’s per curiam in connection with the surrounding facts and circumstances has convinced us that the judge did not abuse his discretion and, as we now view the case, we think it is clearly distinguishable on its facts from State v. Carter.
It is well to reiterate at this point that Article 371 of the Code of Criminal Procedure (R.S. 15:371) expressly vests in the trial judge the discretion of allowing any witness to remain in the courtroom during the trial and to testify as a witness in the case. The right thus accorded by the statute is merely a codification of our long-standing jurisprudence on the subject which has been followed without exception before and since the adoption of the Code of Criminal Procedure in 1928. State v. Bates, 140 La. 833, 74 So. 165; State v. Suire, 142 La. 101, 76 So. 254; State v. Huff, 144 La. 318, 80 So. 551; State v. Thomas, 161 La. 1010, 109 So. 819; State v. Wheeler, 173 La. 753, 138 So. 656; State v. Carter, supra; State v. Barton, 207 La. 820; 22 So.2d 183; State v. Smith, 216 La. 1041, 45 So.2d 617 and State v. Palmer, 227 La. 691, 80 So.2d 374. It is only when the exercise of discretion is shown to be arbitrary or unreasonable and the accused has been thereby prejudiced in obtaining a fair and impartial trial that this Court is warranted in setting aside a verdict.
The question, then, is whether the district judge acted arbitrarily and unreasonably in the case at bar. When the judge stated in his per curiam that in his discretion he “ * * * permitted the chief investigating officer to remain in the Court with the District Attorney” he clearly implied, we think, that he felt that the district attorney was entitled to have the officer with him in order that he might assist in the presentation of the State’s case. Hence, it is not correct to say the circumstances of this case are the same as those appearing in the Carter case, where the judge merely *620 stated that he was exempting three deputy-sheriffs and an investigator from the sequestration rule because it was a matter within his sound discretion. In fact, in the per curiam on the application for rehearing in State v. Carter, the Court made it clear that its ruling there was confined to that particular case in which the trial judge failed to give any reason, either expressly or by inference, for exempting the witnesses from the sequestration rule. The Court said:
“ * * * jn tbe case at bar, the district judge did not say, nor did he intimate, that the presence of the three deputies and the investigator in the courtroom during the progress of the trial was necessary in order to assist the district attorney in making out his case.” 206 La. at page 199, 19 So.2d at page 47.
As we have above observed, the judge plainly indicated in his per curiam that he believed that the chief investigating officer’s presence in the courtroom was (to paraphrase State v. Carter) “necessary in order to assist the district attorney in making out his case. ”
It is to be borne in mind that this case had been previously tried before the same judge and, therefore, he was in an unusual position to exercise a wise discretion as to exemptions from the order of sequestration. In this respect, we note particularly that he declares in his per curiam that “the accused was in no way prejudiced by the presence of the investigating officer or his testimony. ” This statement of the judge, albeit his conclusion, was drawn by him from facts and circumstances which he, himself, had witnesses and should be accepted by this Court in the absence of any showing by appellant that it is not based upon valid grounds.
Counsel proclaim in their brief that the judge’s statement that appellant was not prejudiced is not supported by the facts because Zerangue gave important testimony relative to his investigation of the crime; that it was he who testified to the voluntary character of the first confession given by the accused and that, in giving this testimony, he was placed on the stand only after the other officer who testified as to this confession and, consequently, had the benefit of that officer’s testimony.
We are not aware that the importance of a witness’ testimony is, in itself, a ground for holding that the judge may not exercise his discretion to exclude such a witness from the sequestration order. On the contrary, this Court has approved time and again exemptions from sequestration orders involving prosecuting witnesses and persons aggrieved or injured. See State v. Suire, supra, citing Marr’s Crim. Jurisprudence, Sec. 423. And the circumstance that Zerangue took the stand to testify following the other officer who witnessed the oral *622 confession, is not evidence of unfair treatment where the judge, as in this case, has stated in his per curiam “That the accused was in no way prejudiced by the presence of the investigating officer or his testimony. ”
But even if the importance of the testimony of the witness should he considered as a major criteria in determining whether the judge abused his discretion in a case such as this, it is manifest that Zerangue’s relation to the case was not such as to authorize the conclusion that he would color his testimony or would gain any great advantage in giving his testimony by reason of his presence in the courtroom during the trial. After all, he was merely the chief investigating officer and, like deputy sheriff Black (who also testified as a witness to a confession) in State v. Smith, 216 La. 1041, 45 So.2d 617, had no personal interest in the outcome of the case. In other respects, Zerangue’s testimony was on a parity with that of the medical officer, the investigating officer and the peace officers who were excluded from the sequestration order in State v. Barton, 207 La. 820, 22 So.2d 183, 185, the judge basing his ruling on the fact that none of these witnesses “testified to any fact except such as were brought out by his investigation.”
Additionally it is to be noted here, as was also noted in State v. Barton, that, unlike State v. Carter, appellant’s counsel did not reserve a bill at the time Zerangue took the stand and testified as a witness for the State. Failure to object to Zerangue’s testimony precludes consideration of appellant’s claim that this evidence was prejudicial to him by reason of Zerangue’s presence in the courtroom.
We conclude that the judge did not abuse his discretion in permitting Zerangue to remain in the courtroom to assist the district attorney and that Bill of Exceptions No. 9 is without merit.
Appellant’s first specification of error relates to bill No. 6 which was taken to the denial by the judge of a motion to quash the tales jurors venire. After the first trial, the court ordered the jury commission to select 100 tales jurors for the special term at which the second trial was held. Defense counsel objected to this order on three grounds, the first of which was that, since the tales juror box still contained almost 50 names, the order had the effect of substituting, instead of supplementing, the names in the tales juror box, contrary to the provisions of R.S. 15:186.
There is no merit in this contention. R.S. 15:186, while providing that the jury commission may supplement, without an order of the court, the names of jurors in the tales juror box, also provides that it is the duty of the commission “ * * * at such times as the court may order * * * ” to select 100 tales jurors and place their *624 names in the tales jury box until directed by the court to produce the same. Thus, the judge has the discretion to order the commission to select 100 tales jurors, as was done in this instance, aside from the right of the commission to supplement the tales jury box when it becomes partially exhausted without a court order.
The second contention of counsel is that the panel was illegally selected because the 100 names had already been drawn by the Clerk of Court before the other jury commissioners arrived at the meeting.
This point is likewise without merit. It is immaterial whether all members of the jury commission were present or not when the names of the tales jurors were selected by the Clerk of Court, since it is shown that a quorum of the commission approved the selection. Actually, counsel’s complaint is that the members of the commission agreed to the 100 names without making a personal selection or debating the qualifications of the persons selected by the Clerk. The law does not require this to be done. The approval of the jury commission is tantamount to selection
The third objection to the tales jury venire is that the talesmen selected were all from the city of Opelousas, where the crime was committed and counsel insist that appellant had the right to have the-tales jurors selected from all over the' parish.
This complaint is not well founded.. In his testimony on the motion the Clerk of' Court explained that it has always been the custom to select the tales jurors, unlike-members of the regular venire, who are selected parish-wide, from the immediate vicinity of the courthouse because they receive no compensation unless they serve- and it is a hardship and inconvenience to-call them on the spur of the moment from points all over the parish when they may not even receive reimbursement for travelling expenses. This .testimony is in line-with the provisions of R.S. IS :186 providing that, under certain conditions, the judge has. the right “ * * * to order the summon- • ing of talesmen from among the bystanders . or persons in proximity of the courthouse, . * .* *
At all events, the motion to quash the tales jurors venire was properly overruled because appellant has neither shown fraud, great wrong or irreparable injury, . which are the only causes deemed sufficient . under R.S. IS :203 [4] to authorize the maintenance of such a motion. See State v. . Murphy, 234 La. 909, 102 So.2d 61.
*626 Appellant’s third and fourth specifi- •• cations of error are founded on Bills Nos. 11 and 12, which were reserved to the unrestricted admission in evidence of a photo;graph of the body of the deceased partially • covered by a cape or head cloak, with cord •■attached, worn by her at the time of her •death and to the evidence of the Coroner that she might have been strangled by use •of a certain cord which fastened the cape found on her body.
Defense counsel objected to the introduc'tion of the photograph in evidence and the testimony of the Coroner on the ground that the prosecution was attempting to prove that the cord attached to the cape was the weapon used to strangle the girl, contrary to its statement in the bill of particulars furnished appellant that it did not know the ■weapon or object used to commit the crime :and that no weapon would be produced by it at the trial.
There is no dispute about the law applicable to these bills. The State concedes that it is bound by its bill of particulars. It contends, however, that the objections raised by defense counsel were properly overruled because the cord shown in the photograph was not introduced in evidence and the Coroner was not called upon to prove that the cord was the death weapon.
We think this position is well taken. The State has at no time claimed that the cord was the death weapon. The photograph was introduced in evidence to show the condition of the body at the time it was found; it was not submitted as proof of strangulation by the cord attached to the cape of the deceased. The testimony of the Coroner that the cord might have been used to strangle the child was not elicited for the purpose of showing that it was the instrument of death but, rather, to show that strangulation was one of the probable causes of death. In any event, it is difficult to see how appellant was prejudiced by the Coroner’s conjectural opinion that a cord might have been used to strangle the child.
The fifth specification of error relates to Bill No. 13 which was taken to the admission in evidence of two inculpatory statements of appellant, one oral and one written. Defense counsel contend that the oral statement was not free and voluntary and that its reduction to writing on the following day was tainted with the original defects.
To lay the foundation for the introduction of these statements, in compliance with R.S. 15 :451, [5] the two investigating officers *628 present at the time the oral statement was given testified as to its free and voluntary-nature as did the two officers who took the written statement. The testimony of these witnesses stands uncontradicted as appellant did not testify and produced no witnesses on his own behalf.
Nonetheless, defense counsel say that the State did not establish that the oral statement was free and voluntary for the reason that Deputy Sheriff Soileau, one of the two officers to whom it was given, admitted under cross-examination that he told appellant in words to the effect that “You had just as well tell the truth because we have evidence that you were seen leaving your home with the little girl”. Counsel contend that this was an exhortation to tell the truth, coupled with a statement that the State had sufficient evidence to convict and that a confession so obtained is inadmissible under our jurisprudence.
It is, of course, fundamental that no person under arrest shall be subjected to any treatment designed to compel a confession of crime and any confession, which is not voluntarily made, cannot be used against the person accused. Section 11 of Article 1 of the Constitution of 1921. See also Articles 451 and 452 of the Code of Criminal Procedure (R.S. 15:451, 452). This Court has consistently demanded a strict compliance with the constitutional provision and, in a legion of cases, it has been repeatedly stated that the State has the burden of establishing that a confession is free and voluntary by affirmative convincing proof before it can be received in evidence and, in a number of cases, beyond a reasonable doubt.[6]
On the other hand, the jurisprudence is well settled that it is permissible for law enforcement officers to exhort or adjure an accused to tell the truth provided that the exhortation is not accompanied by an inducement in the nature of a threat or one which implies a promise of reward. See State v. Williams, 129 La. 215, 55 So. 769, Ann.Cas.1913B, 302.
In the case at bar, we do not view the statement of Deputy Sheriff Soileau (that the investigators had evidence that appellant was seen leaving his home with the little girl), which accompanied his exhortation for appellant to tell the truth, to be in the nature of a threat or as holding out either a promise or a reward. Counsel for appellant, in their vigorous argument *630 that the State has not established that the statements were free and voluntary, rely heavily on State v. Ross, 212 La. 405, 31 So.2d 842, 845, where this Court held that the mere statement of an officer to the accused who was under arrest that “ * * * the best thing to do is to tell the truth because we have the evidence against you”, was an inducement calculated to hold out a promise of reward and, as such vitiated the confession obtained thereby.
It cannot be gainsaid that the holding in the Ross case represents an extended concept of involuntariness of confessions resulting from mere exhortations to tell the truth if accompanied by a statement that the prosecution has the evidence to convict the accused, even though the latter (as in this case) fails to make any attempt to rebut the foundation laid by the State witnesses that the confession was free and not induced by any promise or threat.[7] But, assuming, without presently deducing, that it was reasonable for the Court to conclude in the Ross case that the language there used could be interpreted only in the sense that the accused had just as well confess to make things go easier for him, since the State had all the evidence it needed to convict him, the decision cannot support the circumstances presented here. In this case, Soileau did not exhort appellant to tell the truth because the investigators had the evidence against him; his exhortation to tell the truth was coupled only with the statement that the State was in possession of evidence that appellant was seen leaving his home with the little girl. Surely, by no stretch of understanding could appellant have believed that this statement held out a promise of reward in exchange for a confession. Nor does the language imply any sort of threat. To hold otherwise would be to say that enforcement officers can under no circumstances exhort one charged with crime to tell the truth if any information whatever is imparted to the accused regarding the evidence in possession of the State. The Constitution and law protect against threats or promises calculated to induce a confession, irrespective of its truth or falsity (Wigmore, Evidence. Vol. Ill, Sec. 831 (3rd Ed.)); they cannot be employed in such a manner as to hinder reasonable investigation and questioning of suspects by enforcement officers and the results of their legitimate efforts to secure the truth in solving crimes.
Defense counsel further contend that both statements were inadmissible because appellant was subjected to undue pressure by being brought to the scene of the crime *632 where he was shown the body of the girl while surrounded by several police officers and the presence of a gathering of people outside. In support of their contention, counsel cite State v. Honeycutt, 216 La. 610, 44 So.2d 313 and State v. Savell, 238 La. 758, 116 So.2d 513.
There is no substance in the argument and the cases cited by counsel are not in point. In the case at bar, unlike the Honeycutt and Saveli matters, all officers present when the statements were given testified positively and affirmatively as to their free and voluntary nature and also, unlike the cited cases, appellant did not testify nor does he allege that he was beaten, threatened or promised anything. In reality, counsel’s complaint is that the State’s witnesses were not asked on direct examination, in laying the foundation for the admission of the statements, why appellant was brought to the scene of the crime or what happened to him while there and whether any undue pressure was applied by other persons while he was at the scene of the crime. The answer to this complaint is, of course, that defense counsel could have cross-examined the officers on these points but singularly failed to do so. While the State has the burden of showing the voluntary nature of inculpatory statements or confessions, that burden does not impose upon it the duty of accounting for each and every minute during which the accused is held in custody prior to the time of his confession.
The sixth and seventh specifications have reference to Bills Nos. 15 and 16, which were taken to the alleged failure-of the judge in his general charge to instruct the jury that appellant was to be-given the benefit of every reasonable doubt arising out of the want of evidence (Bill No. 15), and an alleged objectionable statement contained in the judge’s charge which, counsel say, was in direct conflict with R.S. 15:387 in that the jury was told, in effect, that, in giving the accused the benefit of every reasonable doubt, it must confine itself to the evidence and not go beyond the testimony to find a doubt from the want of evidence (Bill No. 16).
We find no merit in these objections. Article 387 of the Code of Criminal Procedure (R.S. 15:387) reads as follows:
“The judge shall charge the jury, that every person accused of crime is presumed by law to be innocent until his guilt shall have been established beyond a reasonable doubt; that it is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the want of evidence in the case, and that, if not convinced of his guilt, beyond a reason *634 able doubt, it is their duty to find him not guilty; * * * (Emphasis added.)
An examination of the written charge given by the district judge shows that he fully instructed the jury as to their duty to give appellant the benefit of every reasonable doubt in considering the question of his guilt and he further stated:
“This doubt must be a reasonable one, that is, one founded upon a real, tangible, substantial basis, and not upon a mere caprice, fancy-or conjecture. It must be such a doubt as would give rise to a grave uncertainty raised in your minds by reason of the unsatisfactory character of the evidence.
íjs ífc % sji
“If, after giving a fair and impartial consideration to all the facts in the case, you find the evidence unsatisfactory upon any one single point indispensably necessary to constitute the defendant’s guilt, this would give rise to a reasonable doubt such as would justify you in rendering a verdict of not guilty”. (Emphasis ours.)
It is argued under Bill No. 15 that, when the judge merely instructed the jurors to give appellant the benefit of “any uncertainty raised in your minds by reason of the unsatisfactory character of the evidence” he failed to comply with R.S. 15:387 which also makes it the mandatory duty of the judge to give the accused every reasonable doubt arising out of the want of evidence in the case.
We cannot agree with counsel. It appears to us that, when the judge refers to any uncertainty in the jurors’ minds relative to the unsatisfactory character of the evidence, this connotes any doubts in their minds concerning the lack or want of evidence against the accused as well as any doubts arising from disbelief of any particular witness or witnesses. See State v. Davis, 154 La. 295, 97 So. 449.
In his general charge, the judge told the jury, in substance, that it was to confine itself to a dispassionate consideration of the evidence and not resort to extraneous facts and circumstances in reaching a verdict and that
“ * * * If, on the other hand, any reasonable viezv of the evidence shows that the defendant is not guilty, or the evidence leaves a reasonable doubt of guilt, then, you should acquit.” (Emphasis added.)
Bill No. 16 was taken to this portion of the charge because it prohibited the jury from going beyond the evidence to find a reasonable doubt of guilt. It is said by counsel that such an instruction is violative of R.S. 15 :387, because the statute contemplates that the jury may base their verdict on matters not included in the testimony as well as upon the evidence presented.
*636 Counsel’s contention, in our opinion, stems from a misconception of the statute. The statement therein that the judge shall instruct the jury “to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the want of evidence in the case” plainly imports that the jury should consider only the evidence presented in arriving at a verdict. The provision cannot be construed to mean, as counsel seem to think, that the accused is entitled to an instruction that the jury has the right to consider matters extraneous to the evidence in the case in determining his guilt or innocence.
The eighth and ninth specifications of error relate to appellant’s Bills Nos. 17 and 24. Bill No. 17 was taken to the overruling of appellant’s objection that the judge failed to define the crime of battery in connection with his charge on manslaughter notwithstanding that he expressly defined the crime of aggravated rape in connection with the crime of murder. Bill No. 24 was taken to the refusal of the judge to give appelant’s requested Charge No. 9, defining the crime of battery in connection with the charge on manslaughter.
The basis of these bills is that, since the judge defined the crime of aggravated rape, which was an essential element of murder under the State’s theory of the case, he should have likewise defined the crime of battery inasmuch as appellant, in his inculpatory statements given after his arrest, declared that he had struck the young girl with his fist, the blow causing her to fall and strike her head.
There is no merit in the bills. The prosecution in this case was for murder, the theory of the State being that the killing took place while defendant was engaged in the commission of the felony of aggravated rape. Hence, special instruction by the judge as to the necessary ingredients of the crime of aggravated rape were properly given to the jury in order for it to determine whether the State had sustained its charge of murder while committing a felony enumerated in R.S. 14:30(2). The judge further, in compliance with the provisions of R.S. 15 :386, charged the jury concerning the crime of manslaughter as that crime is responsive to a charge of murder. However, he properly refused to define and charge the jury with respect to the crime of battery, as that offense formed no part of the State’s case. The fact that appellant admitted in his statements that he committed a battery on the child did not entitle him to a charge on battery. The crime of battery was not pertinent to the crime charged in the indictment and, therefore, it was not error to refuse a special charge thereon. State v. Anderson, 137 La. 765, 69 So. 167.
Specifications 10 and 11 relate to Bills Nos. 20 and 23, which were taken to the judge’s refusal to instruct the jury in detail concerning its right to bring in a qualified *638 verdict of guilty without capital punishment, irrespective of the evidence in the case. The requested special charges were refused by the judge on the ground that they were covered by the general charge, in which he listed the possible verdicts in his concluding instructions, telling the jury that it could find the defendant
“(2) Guilty without Capital Punishment. The penalty for this finding is confinement at hard labor in the penitentiary for life.”
The complaint of counsel is that the foregoing charge is not as extensive as it should have been and that the judge should have informed the jury that it was entitled to bring in a qualified verdict irrespective of the conclusiveness of the State’s evidence of guilt and regardless of whether there were extenuating circumstances in the case.
There is no substance in the complaints. It has been twice decided that a charge, which lists all possible verdicts and defines the nature of a qualified verdict (as in this case), is sufficient in law. See State v. Capaci, 179 La. 462, 154 So. 419 and State v. Peyton, 194 La. 681, 194 So. 715, distinguishing State v. Bacon, 138 La. 654, 70 So. 572, a case relied on by appellant.
Although Bill of Exceptions No. 21 is not listed in appellant’s specifications of error, it has been briefed by his counsel and we, therefore, give it special consideration. This bill was taken to the refusal of a requested special charge to the effect that, since the State had filed a Bill of Particuv lars stating that the killing was committed by means of strangulation or suffocation, the proof must correspond thereto and that, if the State fails to prove beyond a reasonable doubt that strangulation or suffocation was the means of the killing, appellant must be acquitted.
The judge declares in his per curiam that the requested instruction was covered by his general charge which, in essence, set forth that the State carried the burden of proving its case against appellant beyond a reasonable doubt.
We find no error in the ruling. The purpose of a Bill of Particulars is to give an accused detailed information so that he will be fully apprised of the particular nature of the State’s case and also to restrict the State in its proof to the facts and circumstances stated in the bill. In support of their argument, counsel cite authorities respecting the necessity of the State’s proof conforming with the allegations of the indictment but we know of no authority for their contention that the judge must charge the jury on the evidence in its factual particulars upon the request of the accused. On the contrary, Article 385 of the Code of Criminal Procedure (R.S. 15 :385), which deals with the scope of the judge’s charge, simply states that the judge shall charge *640 the jury “ * * * on the law applicable to the case * * *
Appellant’s twelfth specification relates to Bill No. 25, which was taken to the overruling of a motion for a new trial. In this motion, counsel reiterate all of the previous motions and objections which the judge had already passed on, most of which we have heretofore considered. As to those points raised in bills to which we have not given special consideration (because they were neither briefed nor argued by defense counsel), suffice it to say that we have perused the complaints and find no merit therein. The motion for a new trial was, therefore, properly overruled.
Lastly, we consider appellant’s thirteenth specification, dealing with Bill No. 26, which was taken to the overruling of a motion in arrest of judgment. This motion is based on the ground that the indictment is invalid and ineffective because it was not endorsed a true bill in handwriting either by the foreman or someone else acting on instructions of the grand jury. Examination of the indictment shows that the words “A True Bill” were printed on the reverse side of the indictment and, directly underneath, is the signature of the foreman of the grand jury.
While it is the well-settled law of this State that an indictment must be endorsed a true bill and the endorsement signed by the foreman of the grand jury, and that failure to do so renders it fatally defective (see State v. Stoma, 199 La. 529, 6 So.2d 650 and cases there cited), we know of no authority requiring that the words “A True Bill” be written on the indictment and that printing does not suffice. R.S. 15 :3 declares that the finding of an indictment must be concurred in by at least nine of the grand jurors “ * * * and the indictment indorsed a true bill, and that indorsement must be signed by the foreman of the grand jury”. This does not mean that the endorsement “A True Bill” must be made in handwriting; formal compliance with the statute is effected when the indictment is stamped “A True Bill” and the foreman signs his name under these words.
The conviction and sentence are affirmed. The right of appellant to apply for a rehearing is reserved.
HAWTHORNE and HAMLIN, JJ., dissent from ruling on bills of exception No. 9.

. Having sexual intercourse with a female under 12 years of age constitutes aggravated rape under R.S. 14:42 and lack of knowledge of the female’s age is not a defense.

. Murder is committed under R.S. 14:30 when the offender is engaged in the commission of certain felonies enumerated in the statute, even though there is no intent to kill. Aggravated rape is one of the felonies listed therein.

. The Court in the Carter case stated on the original hearing that the ruling of the trial judge “ * * * in permitting these three witnesses to remain in the courtroom and hear and see what transpired, for all practical purposes deprived the accused of his right to cross-examine them.” On application for rehearing in that case, the State contended that this ruling had the effect of overruling all the prior jurisprudence on the subject and nullified the statutory power vested in the trial judge. The Court, then, in a per curiam opinion refusing the application, explained that it had not intended to overrule the prior cases and that its decision was confined to the circumstances presented in that particular matter. We regard the per curiam opinion as evincing an intent to withdraw the statement anent the denial of the accused’s right to cross-examination of witnesses who have been excepted from a sequestration order. At any rate, this Court, as presently constituted, does not agree with, or adhere to, that pronouncement.

. It provides: “It shall not be sufficient cause to challenge the venire selected for any session of the court * * * or to set aside the venire, because some of the jurors on the list are not qualified to act, nor because of any other defect or irregularity in the manner of selecting the jury, or in the composition, summoning. *626 or proceedings of the jury commission, unless some fraud has been practiced or some great wrong committed that would work irreparable injury; * * * ”.

. “Before what purposes (sic: purports) to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.”

. E. g., State v. Henry, 196 La. 217, 198 So. 910; State v. Graffam, 202 La. 869, 13 So.2d 249; State v. Ellis, 207 La. 812, 22 So.2d 181; State v. Ross, 212 La. 405, 31 So.2d 842; State v. Wilson, 214 La. 317, 37 So.2d 804; State v. Alexander, 215 La. 245, 40 So.2d 232; State v. Robinson, 215 La. 974, 41 So.2d 848; State v. Honeycutt, 216 La. 610, 44 So.2d 313; State v. Green, 221 La. 713, 60 So.2d 208; State v. Johnson, 229 La. 476, 86 So.2d 108; State v. Savell, 238 La. 758, 116 So.2d 513.

. On the phase of rebuttal, compare State v. Robinson, 215 La. 974, 41 So.2d 848, where it was held, on rehearing, that the accused’s testimony that he was beaten and otherwise mistreated cast sufficient doubt upon the State’s evidence to warrant the conclusion that the voluntariness of the confession had not been convincingly established.