485 So.2d 224 (1986)
STATE of Louisiana, Respondent,
v.
Julius Frances HARPER, Applicant.
No. 17777-KW.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1986.
*225 N. Graves Thomas, Shreveport, for applicant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Henry Brown, Dist. Atty., Bobby Stromile, Asst. Dist. Atty., Bossier City, for respondent.
Before MARVIN, FRED W. JONES, Jr. and LINDSAY, JJ.
MARVIN, Judge.
On defendant's application, we granted supervisory review of the trial court's denial of defendant's motion to suppress his confession on the grounds that it was involuntary, being made under the influence of inducements or promises L.R.S. 15:451. We reverse and sustain the motion to suppress.
As a matter of constitutional law, a confession obtained by direct or implied promises or inducements by a police officer, however slight, must be considered involuntary and inadmissible. We recently recognized the principle in State v. Hall, 434 So.2d 517 (La.App. 2d Cir.1983), writ denied, citing among other cases Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). The Louisiana Legislature recognized the principle in the 1928 Code of Criminal Procedure, Act 2 of 1928, the source of LRS 15:451,[1] 452.[2]
The state of mind of the defendant and the interrogating officer are highly relevant to resolution of the issue whether the inducement or promise was calculated, under the circumstances of the particular case, to induce a confession. State v. Richard, 223 La. 64, 66 So.2d 589 (1953); State v. Nuccio, 454 So.2d 93 (La.1984). Each case, of course, must be decided on its own circumstances. State v. Benoit, 440 So.2d 129 (La.1983).
The defendant's confession was taped and transcribed. The DHHR agent, the two deputies who interrogated defendant, and the defendant testified at the hearing on the motion to suppress. Defendant was interrogated about an incestuous relationship with his daughter on three occasions and consistently expressed much concern about the welfare of his family (wife, daughter, and two sons) if he should lose his job as a state wildlife and fisheries agent because of the investigation. One of the deputies, in order to allay defendant's fears, promised defendant verbally and then in writing on April 18, 1985, *226 in the event that [defendant] is charged with a crime or implicated in an investigation that is currently underway, that the Bossier Sheriff Dept. will not inform the La. Wildlife & Fisheries of the results of this investigation.
When that promise is viewed in the light of the totality of the transcribed confession of April 19, 1985, and the testimony of the participants, and with the other inducements which singularly might not have proved fatal to the confession, we must find that the confession was made under the influence of the inducements and promises of police officers that were calculated to induce the confession. These circumstances render the confession involuntary. We must respectfully find that the trial court's conclusion to the contrary is not supported by the record.
Accordingly, we reverse and grant the defendant's motion to suppress the confession. CCrP Art. 703.

FACTS
Defendant was first contacted by a Bossier Parish Sheriff's deputy and a representative of the Department of Health and Human Resources of the State on April 16, 1985, and was told that his 16-year-old daughter had informed them that he had been engaged in an incestuous relationship with her for approximately seven years. Defendant denied the relationship in the presence of his wife and agreed to have his daughter examined by a doctor. On April 18, defendant was questioned in the Sheriff's office by two deputies, where he was exhorted "to tell the truth," to do it the "easy way" and not "the hard way" which would avoid having the investigation or trial "put on the street and in the papers." One of the deputies admitted that he told defendant during the course of the interrogation on April 18 that defendant would not be separated from his family. Defendant testified that this deputy told him of "another case" where a father in similar circumstances "was never separated from his family," and told him that he would talk to the district attorney's office in an attempt to see what kind of a deal could be worked out. The other deputy said that defendant, on April 18, was very much concerned that he would not be able to keep his job and would not be able to support his family properly and that he did not want his supervisor to be notified. This conversation immediately led to the written promise, above quoted.
Defendant did not confess on April 18, but was allowed to go home for the purpose of talking about the accusation with his wife and was requested to return to the sheriff's office the next day.
In the transcribed statement of April 19 defendant prefaced his remarks by stating
I'm giving this statement with the strict understanding that they will notdrag my wife or my daughter through a court fightMy only concern is for my wife, my two sons and my daughter to be taken care of. It is apparent that my daughter has mental problems. I am very much concerned that these are taken care of.
After making inculpatory statements, defendant stated:
... Again, I think it's the opinion of these two detectives that my job is more important than my family. They are entitled (inaudible). The only concern that I have with this job is that if I can keep this job and stay out from behind bars, that I feed, clothe and protect. If it becomes necessary for me to get out of State Service for any reason, I request time to resign, because it is my understanding that by doing so, that they will get what money I have paid in, plus all of my accumulated leave time, and this monetary value will not be much, but it will be more than they've got at this time.
Defendant was then asked if any coercion had been used against him to get him to give the statement. Defendant said:
in my opinion yes. You stated yesterday that if I did not give you this statement, that you would draginto the papers and into the court system. After careful, careful consideration, *227 my family's welfare is beyond mine. As I stated to you several times what you do to me is immaterial. You can lock me up right now. If I never walked out of here, that's fine. Just don't hurt my family.
[1st Deputy] Alright. Well, let me clarify what I told you yesterday. And I think you'll agree with this statement. That I said thatthere was two ways to do this. An easy way and a hard way. And what I mean by the hard way is thatthe other way we'd have to go and we'd have to interview a lot of different people and we'd have to go to court andsome people would have to testify against you and for you, and all of this kind of stuff. And it would be a matter ofto the publiclet everybody know what was going on in the [Harper] family and we wanted to try to do this in a way that would not upset the household. Do you agree with that? * * * Do you agree essentially with what I said?
[Defendant] I don't agree with the statement that you made yesterday, that it would be in the papers. No I definitely do not.
[1st Deputy] I didn't say anything about it being in the paper.
[Defendant] You did most definitely say that* * * I ain't saying that you intentionally did it ah, threaten me or anything but you did * * * say it, and it did bear on my mind.

[1st Deputy] Okay. Well, what I wanted to bear on your mind was that we wanted to make this thing a private matter as much as possible.

[Defendant] I can appreciate that.
[1st Deputy] And I think you understood that.
[Defendant] Yeah. I appreciate that.
[2d Deputy] I was just gonna say, that I think what [1st Deputy] was talking about and you as a law enforcement officer can appreciate this, if you have to go to court on any matter, then it becomes a public record because news and media personnel can get into the courtroom and ... they have access to that public courtroom. And since you are not interested in fighting this allegation then we won't have to worry about court.

[Defendant] As I stated, I give you what you asked for, I give you what I think is the best to protect my family and do whatever you want with me at this time.
[2d Deputy] Okay. Let's go ahead and conclude then.
[1st Deputy] AlrightThis concludes the statement... Our emphasis.
The trial court reasoned that
"the statements were made ... in order to quiet the immediate fears of this defendant as to the consequences of his plea rather than to get him to make an inculpatory statement to admit to something that he possibly didn't do ... Certainly he did go home and he had the whole ... night to think it over again before he made these statements. He... had talked to the ... [DHHR] investigator [and] was on his way up here to make a statement. I think he knew the consequences of it and wasn't promised anything for making it."

CONCLUSION
The test of voluntariness, as we have said, is not the truth or fabrication of the substance of the confession, but whether the words of the interrogating officer were calculated to induce or to influence the defendant to make the [true or fabricated] confession. Richard, supra; State v. Ross, 212 La. 405, 31 So.2d 842 (1947); LRS 15:451.
We recognize that general exhortations to tell the truth and suggestions that things might be "better" or "easier" for a defendant if he will tell the truth or "cooperate," have been often held not to have been calculated or designed to extract or to influence a confession. See Hall, supra. Compare State v. Jackson, 381 So.2d 485 (La.1980); State v. Morvant, 384 So.2d 765 (La.1980). We also recognize that time has been held to have "cured" some promises *228 or inducements that otherwise were assumed to have been calculated to influence a defendant to confess. State v. Beck, 445 So.2d 470 (La.App. 2d Cir.1984), writ denied.
The essence of what was expressed and implied by the deputies before defendant made the confession was that if defendant would admit his guilt (the "easy way"), the deputies would not tell his employer about the investigation; defendant might not have to go to jail or be separated from his family; the case could be handled privately and defendant would not have "to worry about [open] court;" and the deputies would try to get the district attorney to agree to these things.
In this sense the deputies did more than exhort defendant's conscience. The essence of what was said to defendant on April 18, while not recorded, was reiterated and explained in the taped interview on April 19. The defendant left the April 18 interview with a written promise of "privacy" (we won't tell). On April 19, defendant said he felt some coercion by the April 18 suggestion of the deputy that the investigation might get into the papers and into open court (the "hard way"). The deputy agreed that he wanted the private vs. public alternative to bear on defendant's mind. This evidence leads to no conclusion other than the statements and promises of the deputies were calculated to influence (LRS 15:451) or to induce (Richard, Ross, Hall, supra) the defendant to confess. The April 19 interview was the second verse and the same chorus of, and reinforced the April 18 interview, the time lapse notwithstanding.
The State has what has been called the heavy burden of affirmatively proving beyond a reasonable doubt that a confession was free and voluntary and was not influenced by coercion or promises. State v. Burkhalter, 428 So.2d 449 (La.1983); State v. Neslo, 433 So.2d 73 (La.1983). The State must specifically rebut circumstances which indicate coercive methods or undue influence on a defendant to fulfill its burden under LRS 15:451. State v. Haynie, 395 So.2d 669 (La.1981). The testimony of the interrogating officers and the transcribed interview of the April 19 interrogation tend to corroborate, rather than rebut, that defendant was influenced by police to confess in order to obtain what was promised him, on April 18 and on April 19.

DECREE
The trial court's ruling is REVERSED and defendant's motion to suppress his confession of April 19, 1985, is sustained and defendant's case is remanded for further proceedings.
NOTES
[1] Before what [purports] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. § 451.
[2] No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel a confession of crime. § 452.